# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDRE JOHNSON,<br><br>       Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>       Defendant. | No. 1:16-cv-03062-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion (ECF No. 15) and denies Defendant's motion (ECF No. 17).

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless."
*Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate
nondisability determination." *Id*. at 1115 (quotation and citation omitted). The
party appealing the ALJ's decision generally bears the burden of establishing that
it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within
the meaning of the Social Security Act. First, the claimant must be "unable to
engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of not less than twelve
months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's
impairment must be "of such severity that he is not only unable to do his previous
work[,] but cannot, considering his age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the national economy."
42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§
404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner
considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on February 17, 2012.  Tr. 180-86, 187-92.  In his disability insurance benefits application, Plaintiff alleged an onset date of January 1, 2006.  Tr. 180.  In his supplemental security income benefits application, Plaintiff alleged an onset date of January 1, 2011.  Tr. 187.  The applications were denied initially, Tr. 95-102, and on reconsideration, Tr. 104-15.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on October 15, 2013.  Tr. 36-66.  At the hearing, Plaintiff amended the onset date to April 24, 2011.  Tr. 39.  On April 29, 2014, the ALJ denied Plaintiff's claim.  Tr. 19-28.

At the outset, the ALJ determined that the date last insured is December 31, 2012.  Tr. 21.  At step one of the sequential evaluation analysis, the ALJ found

Plaintiff has not engaged in substantial gainful activity since April 24, 2011, the alleged onset date.  Tr. 21.  At step two, the ALJ found Plaintiff has the following severe impairments: adjustment disorder, mixed; history of alcohol-related psychosis, in remission; and history of right clavicle failure.  Tr. 22.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following additional limitations:

> [The claimant is able] to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  The claimant could frequently reach with his right upper extremity.  He could have contact with the public less than 10 percent of the workday and only superficial contact with co-workers.

Tr. 24.

At step four, the ALJ found Plaintiff is able to perform his past relevant work as a lumber off-bearer.  Tr. 27.  Alternatively, at step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as hand packager and laundry laborer.  Tr. 27-28.  Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from April 24, 2011, through the date of the decision.  Tr. 28.

On February 19, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making that decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly discredited Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ properly identified all of Plaintiff's severe impairments. ECF No. 15 at 5-6.

## DISCUSSION

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 15 at 13-19.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The

claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir.

2002)).

In making an adverse credibility determination, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ failed to provide specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." Tr. 24.

### 1.    Motivation to Work

First, the ALJ found Plaintiff's lack of motivation to work impaired his credibility. Tr. 24-25. An ALJ may properly consider the issue of motivation in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding an ALJ may draw reasonable inferences regarding a claimant's motivation to work). Here, the ALJ found Plaintiff's testimony with respect to his motivation to return to work was "equivocal." Tr. 24. The ALJ concluded that Plaintiff admitted he never really wanted to work, but "might be motivated to do so for financial gain." Tr. 24-25 (citing Tr. 58). The ALJ noted that in July 2012, Plaintiff was interested in working and hoped his father would hire him as a laborer in a forest products company; however, the ALJ found this job did not work out or was not realistic.

Tr. 25 (citing Tr. 933). The ALJ further found that in February 2013 Plaintiff said he was interested in returning to work. Tr. 25 (citing Tr. 848). The Court agrees with Plaintiff the ALJ mischaracterized Plaintiff's testimony. ECF No. 15 at 14-15 (citing Tr. 25, 58). When asked at the hearing if he would like to work, Plaintiff responded that he would, but he also said he did not think he was "too capable." Tr. 58. Plaintiff testified he did not think he was capable of working because he is required "to see my doctor every three months and get a day off"; in addition, Plaintiff stated he has unspecified psychosis and rapid thoughts; moreover, Plaintiff stated he would work if he was "capable" and in his "right mind." Tr. 58, 60. Plaintiff's statements cited by the ALJ that he was interested in working to make money and did not think he was capable of working do not support a finding of lack of motivation to work. This reason is not supported by substantial evidence in the record.

### 2.    *Improvement with Medication*

Next, the ALJ found Plaintiff's improvement with medication weakens the credibility of Plaintiff's allegations. Tr. 24-26. An ALJ considers the nature and effectiveness of any treatment a claimant receives for his allegedly disabling

symptoms.  *See* 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2011);[1] *see also Warre*

*v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); S.S.R. 96-7p[2]

(conditions effectively controlled with medication are not disabling for purposes of

determining eligibility for benefits) (internal citations omitted).

The ALJ's assertion that Plaintiff improved with medication is contradicted

by the fact that the record demonstrates that Plaintiff continued to experience

psychotic symptoms even after he began taking medication, as discussed more

fully *infra.  See, e.g.*, Tr. 441 (in November 2011, Plaintiff reported to provider

Reese Copeland, M.A., that he was experiencing audio and visual hallucinations;

Plaintiff appeared to be compliant with taking his medications); Tr. 919 (in August

2012, Plaintiff indicated he was complaint with medications and denied symptoms

---

[1] These regulations were also amended effective March 27, 2017.  The amendments

also provide that medication and treatment are important indicators of the intensity

and persistence of symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2017).

[2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

ruling also provides that the consistency of a claimant's statements with objective

medical evidence and other evidence is a factor in evaluating a claimant's

symptoms.  S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the

time of the ALJ's decision and therefore does not apply in this case.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

yet treatment provider Marc Shellenberger, B.A., observed Plaintiff apparently responding to internal stimuli, indicating active psychotic symptoms). This reason is not supported by substantial evidence in the record.

### 3. Lack of Objective Medical Evidence

Third, the ALJ found the medical record did not support the degree of psychiatric limitation alleged. Tr. 22, 24-26. An ALJ may not discredit a claimant's testimony as to the severity of his symptoms merely because they are unsupported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011).

As discussed above, the ALJ's finding Plaintiff less than fully credible because he lacked motivation to work, and because medication improved his condition, was not supported by the record. Because the ALJ's other two reasons for the credibility finding are not clear and convincing, even if the ALJ's consideration of the objective evidence were reasonable, there would be no legally sufficient basis for the credibility finding since objective evidence cannot be the only factor supporting a credibility determination. As such, the credibility finding is legally insufficient and the matter must be remanded for reconsideration.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred because he gave too much weight to the opinion of examining psychologist, Jay Toews, Ed.D; less clearly, Plaintiff contends the ALJ gave too little weight to the opinions of examining psychiatrist Jeffrey Jennings, M.D, reviewing physician Eugene Kester, M.D., and Plaintiff's treatment providers. ECF No. 15 at 7-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-3).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* S.S.R. 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

### 1. *Examining Psychologist-Jay Toews, Ed.D.*

Plaintiff contends the ALJ gave too much weight to the opinion of examining psychologist Jay Toews, Ed.D. ECF No. 15 at 9-13. In November 2013, Dr. Toews performed a consultative examination. Tr. 1221-43. Dr. Toews opined that after Plaintiff became sober in April 2011 and took psychotropic medication as prescribed,[3] Plaintiff's symptoms of alcohol-related psychosis went into remission. Tr. 1228. Dr. Toews further opined Plaintiff's history of cannabis abuse was currently in sustained full remission, and Dr. Toews diagnosed history of alcohol-related psychosis, in remission, and adjustment disorder, mixed. Tr. 1228.[4] It appears Dr. Toews is the only source who diagnosed history of alcohol-

---

[3] On February 21, 2012, for example, Plaintiff reported his medications included Citalopram (Celexa) (an antidepressant), Prazosin (minizide) (for nightmares), Trazadone (for sleep), and the antipsychotic medication Risperdal, prescribed in both pill form and as an injection every two weeks. Tr. 205, 334.

[4] Dr. Toews stated the "gross time line given for alcohol abuse indicates hallucinations and disordered thinking was correlated with alcohol abuse, suggesting psychotic symptoms were due to alcohol abuse." Tr. 1224. As noted *supra*, several records contradict Dr. Toews' interpretation.

related psychosis, in remission.  Tr. 1228.  The ALJ gave "great weight" to Dr. Toews' opinion.  Tr. 25.

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."  *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).  Here, the ALJ failed to set forth specific, legitimate reasons for crediting Dr. Toews' opinion over the consistent opinions of treating, examining, and reviewing sources.

First, Plaintiff contends the ALJ erred by giving significant weight to Dr. Toews' opinion because it is not supported by Plaintiff's treatment records.  ECF No. 15 at 10.  Factors relevant to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

As noted, Dr. Toews opined Plaintiff's psychotic symptoms correlated with alcohol abuse and went into remission after Plaintiff achieved sobriety.  Tr. 1224, 1228.  The ALJ accepted Plaintiff's testimony he last consumed alcohol on April 24, 2011, and thereafter was clean and sober.  Tr. 22 (citing Tr. 54).  Plaintiff cites several treatment records after April 2011 that contradict Dr. Toews' opinion Plaintiff's psychotic symptoms were related to or caused by alcohol abuse.  ECF

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

No. 15 at 8, 10.  For example, after about seven months of sobriety, on November 21, 2011, Plaintiff reported to mental health treatment provider Reese Copeland, M.A., he had been experiencing both visual and auditory hallucinations; Mr. Copeland indicated Plaintiff appeared to be taking medication as prescribed; and there is no mention of substance abuse.  Tr. 441.  As another example, on December 21, 2011, Mr. Copeland noted Plaintiff was experiencing symptoms.  Tr. 395.  Mr. Copeland, suspecting substance use was increasing Plaintiff's psychotic symptoms, ordered urinalysis; test results, however, were negative for substance abuse.  Tr. 395-96.  As a further example, on August 23, 2012, Plaintiff told treatment provider Marc Shellenberger, B.S., he was taking all medications as prescribed, denied mental health symptoms, and no evidence of active substance use was noted; however, Mr. Shellenberger nonetheless observed Plaintiff appeared to be responding to internal stimuli, indicating active psychotic symptoms.[5]  Tr. 919.  Moreover, as yet another example, in February 2013

---

[5] An observed response to internal stimuli is usually considered evidence that corroborates the existence of psychotic symptoms.  *See, e.g., Daniel v. Colvin*, 2014 WL 2813136 at *5 (C.D. Cal. June 23, 2014) (a treating or examining physician's observation that a Plaintiff is responding to internal stimuli may be medical evidence that corroborates a diagnosis of schizophrenia); *Gallegos v.*

treatment provider Angelo Ballasiotes, Pharm. D., changed Plaintiff's diagnosis from psychosis NOS to schizophrenia, paranoid type, again indicating psychotic symptoms persisted well after Plaintiff became clean and sober. Tr. 847. The ALJ failed to address the treatment records that indicated Plaintiff's psychotic symptoms did not go into remission after Plaintiff attained sobriety. As the foregoing examples illustrate, Dr. Toews' diagnosis of history of alcohol-related psychosis, in remission, is contradicted by treatment records indicating Plaintiff's psychotic symptoms persisted after sobriety. The ALJ failed to set forth specific, legitimate reasons for crediting Dr. Toews' opinion over the bulk of the record as a whole, including Plaintiff's treatment records.

Second, Plaintiff contends the ALJ erred because he found Dr. Toews based his opinion on a review of the relevant medical records. ECF No. 15 at 11 (citing Tr. 25). Plaintiff contends Dr. Toews' opinion does not, in fact, appear to be based

*Astrue,* 2008 WL 1734376 at *10 (E.D. Cal. Apr. 11, 2008) (Plaintiff had no objective findings of schizophrenia such as suspiciousness, preoccupation with internal stimuli, blunting of affect or loosening of associations); *Price v. Berryhill*, 2017 WL 2417852 at *2 (D. Mont. June 5, 2017) (claimant's reported chronic auditory hallucinations undermined by lack of observed response to internal stimuli by mental health care providers).

on a comprehensive record review.  As Plaintiff points out, the ALJ found Dr. Toews based his opinion on the results of psychological testing and mental status examination, review of prior records, and a detailed history; and these provided a "good foundation for his opinion."  ECF No. 15 at 10 (citing Tr. 25, 1225-28).  As Plaintiff further notes, the ALJ credited Dr. Toews' conclusion Plaintiff's test results were generally in the low average range, memory and cognitive functioning were not impaired, and Plaintiff's test scores were sufficient for Plaintiff to function in a wide range of semi-skilled jobs and successfully participate in vocational rehabilitation.  ECF No. 15 at 10 (citing Tr. 25, 1225-26, 1228).

However, Dr. Toews' opinion referenced only four treatment notes and one evaluation,[6] despite a record of over 1,100 pages.  Plaintiff contends this indicated that perhaps Dr. Toews did not receive or review the full record; in any event, Plaintiff contends, the treatment record does not support Dr. Toews' opinion that Plaintiff's psychotic symptoms were entirely caused by alcohol abuse.  ECF No.

---

[6] Dr. Toews referenced a June 2009 CWCMH evaluation that diagnosed unspecified psychosis, two February 2013 CWCMH treatment records, and two additional 2013 treatment records, in June and July, from CWCMH providers.  Tr. 1221-22.

15 at 11 (citing Tr. 1221-22) (records reviewed by Dr. Toews). Plaintiff's

suggestion the record was not provided or reviewed is rejected as speculative.

Plaintiff contends the ALJ should have given Dr. Toews' opinion less

weight because it differs markedly from many treatment records. ECF No. 15 at

11-12. The consistency of a medical opinion with the record as a whole is a

relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d

1028, 1042 (9th Cir. 2007), *Orn*, 495 F.3d at 631. Plaintiff is correct that the ALJ

appears to have overlooked the inconsistency between Dr. Toews' opinion and the

record as a whole, a relevant factor an ALJ is to consider when weighing a medical

opinion. *See Orn*, 495 F.3d at 631. Plaintiff also contends Dr. Toews' statement

that he based his opinion on information obtained at the evaluation implied Dr.

Toews did not base his opinion upon his review of the record. ECF No. 15 at 11-

12 (citing Tr. 1228) (Dr. Toews disagreed with Dr. Jennings' 2007 diagnosis of

psychosis NOS and opined a "diagnosis of Alcohol Induced Psychotic Disorder

would have been more consistent with facts (obtained at this examination))." The

Court disagrees because Dr. Toews could have relied on both the record review

and the examination results in reaching his conclusions. However, because Dr.

Toews' opinion is inconsistent with the record as a whole, substantial evidence

does not appear to support the ALJ's reason for crediting the opinion.

Third, Plaintiff contends the ALJ should have rejected Dr. Toews' opinion

because Dr. Toews assessed functioning in areas Plaintiff has not alleged

limitation. ECF No. 15 at 13. For example, Dr. Toews tested Plaintiff's cognitive

and memory abilities and opined they do not interfere with work-related

functioning. Tr. 1228. Plaintiff contends this finding is irrelevant to his

functioning because he has never alleged deficits in these areas; instead, Plaintiff

has consistently alleged he suffers a psychotic disorder that causes paranoia and

visual and audio hallucinations, and these symptoms in turn distract Plaintiff and

interfere with his ability to focus.[7] ECF No. 15 at 13. However, relevant evidence

the ALJ should consider includes psychological test results. *Rojas v. Astrue*, 2010

WL 3663734, at *2 (C.D. Cal. September 13, 2010) (citing S.S.R. 85-16) (relevant

evidence includes history, findings, and observations from medical sources

(including psychological test results)). Thus, even if Dr. Toews tested functioning

_____

[7] Plaintiff's contention he suffers from a psychotic disorder is supported, for

example, by the diagnoses and records of many treatment providers before and

after Plaintiff achieved sobriety. *See, e.g.,* Tr. 283 (in February 2010 Kathleen

Mack, ARNP, diagnosed unspecified psychosis); Tr. 595 (in August 2011 Rory

Sumners, M.D., noted Plaintiff's stated history of "unspecified psychosis"); Tr.

847 (in 2013 Dr. Ballasiotes changed Plaintiff's diagnosis from psychosis NOS to

schizophrenia, paranoid type).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

in areas Plaintiff has not alleged limitation, this would not be a legitimate reason to reject Dr. Toews' opinion.

Fourth, Plaintiff contends Dr. Toews erred when he concluded Plaintiff was capable of employment based on Plaintiff's lack of active psychotic symptoms during the evaluation. ECF No. 15 at 12-13 (citing Tr. 1222) ("By observation he was not delusional or hallucinating and there was no impairment of memory or intellectual functioning noted."). It may be error for an ALJ to rely on symptom-free intervals and brief remissions because they may not reflect true functional ability. *Garrison*, 759 F.3d at 1023 n.22 ("With regard to mental disorders, the Commissioner's decision must take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts . . . Given the unpredictable course of mental illness, [s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse."). The ALJ appears to have assessed limitations based on Plaintiff's lack of psychotic symptoms on a single "symptom-free" occasion, a reason that is not legitimate.

## 2. *Other Medical Opinions*

Plaintiff points out Dr. Toews' opinion is contradicted by several other medical opinions. Here, because the case is being remanded for other reasons, the

ALJ should reconsider Dr. Toews' opinion together with the medical and other evidence.

For example, Plaintiff contends the ALJ should have credited the 2007 opinion of Jeffrey Jennings, M.D., an examining psychiatrist, who diagnosed psychosis, not otherwise specified (NOS)[8] and found that it is a severe impairment. ECF No. 15 at 7-9 (citing Tr. 1109-12). Dr. Jennings assessed three marked social limitations, one marked cognitive limitation, and opined Plaintiff's thought disorder and symptoms of schizophrenia impacted his ability to concentrate and perform higher level tasks. Tr. 1110-11. Because the case is being remanded for other reasons, the ALJ should reconsider Dr. Jennings' opinion together with the medical and other evidence.

In addition, Plaintiff notes that in April 2011, reviewing physician Eugene Kester, M.D., diagnosed psychosis NOS and opined Plaintiff's condition had not medically improved since February 1, 2011. ECF No. 15 at 7-8 (citing Tr. 1218-

_____

[8] Dr. Jennings also diagnosed cannabis dependence and alcohol, cocaine, and amphetamine abuse. Tr. 1110.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

20).[9]  Dr. Kester further found treatment providers' records show they "observed [Plaintiff's] response to [internal] stimuli."  Tr. 1218-19 (citing Tr. 289) (note dated March 4, 2011 from CWCMH stated Plaintiff "appears to be mumbling softly in response to internal stimuli.").  Significantly, an observed response to internal stimuli is usually considered evidence that corroborates the existence of psychotic symptoms.[10]  The ALJ did not discuss this opinion.

Because this case is being remanded for other reasons, the ALJ should consider Dr. Kester's opinion together with the medical and other evidence.

Plaintiff further, and importantly, points out that treating providers' records indicate psychotic symptoms persisted even after sobriety, contrary to Dr. Toews' opinion.  ECF No. 15 at 8-9.

---

[9] Dr. Kester reviewed four treatment records.  Tr. 1219.  In a report labeled "Re-exam," Dr. Kester diagnosed psychosis NOS, cannabis dependence, unspecified, and alcohol abuse.  Tr. 1218.

[10] *See, e.g., Daniel*, 2014 WL 2813136, at *5 (a treating or examining physician's observation that a Plaintiff is responding to internal stimuli may be medical evidence that corroborates a diagnosis of schizophrenia); *Price*, 2017 WL 2417852, at *2 (claimant's reported chronic hallucinations undermined by lack of observed response to internal stimuli by mental health care providers).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

The ALJ credited very little opinion evidence from "other sources."  Tr. 22, 25-26.  On remand, the ALJ will reconsider all of the evidence, including the opinions and records of treating sources.  Here, for example, the ALJ only cited five "other source" treatment records. Tr. 26.  All indicated Plaintiff was functioning well.  Tr. 26.  In April 2012, treatment provider Marc Shellenberger, B.S., reported Plaintiff denied experiencing any mental health symptoms and said he felt stable (citing Tr. 639); in May 2012 Mr. Shellenberger reported Plaintiff appeared to be complying with current medications and stated medications really helped him, including with maintaining stability; Plaintiff remained clean and sober and seemed to be doing well (citing Tr. 626); on February 20, 2013, treatment provider Angelo Ballasiotes, Pharm. D., reported Plaintiff stated he felt motivated to maintain stability so he could eventually return to work; Plaintiff was upbeat, positive, and discussed past and future strategies for maintaining sobriety; Plaintiff was taking medications as prescribed (citing Tr. 848); five days later, on February 25, 2013, Dr. Ballasiotes reported Plaintiff remained stable, maintained sobriety, and did not need to return for medication management for three months (citing Tr. 847).  In the fifth and final treatment provider record cited by the ALJ, on June 19, 2013, Dr. Ballasiotes reported Plaintiff stated he (1) had no issues with depression, anxiety, anger or irritability; (2) did not have paranoid thoughts or hallucinations; (3) slept well; (4) did not have thoughts of self-harm or harming

others; (5) had a significantly improved home life; (6) did not have urges to use drugs or alcohol; (7) continued to attend AA meetings and church regularly; and (8) rated himself at 95 on a scale of 0 to 100.  Tr. 26 (citing Tr. 808).

However, despite these positive records, other treatment provider records indicated Plaintiff's psychotic symptoms continued well after his period of sobriety began in April 2011.  The ALJ does not address this evidence.  For example, in December 2011, after Plaintiff had been clean and sober for about eight months, treatment provider Dr. Ballasiotes found Plaintiff reported he was not doing as well as previously; Plaintiff explained he was experiencing audio and visual hallucinations and having paranoid thoughts.  ECF No. 15 at 11 (citing Tr. 422, 424).  As another example, in February 2012 Plaintiff told treatment provider Reese Copeland, M.A., he was experiencing psychotic symptoms.  Notably, at the same time, urinalysis for substance abuse was negative.  ECF No. 15 at 11(citing Tr. 340, 347).  As a further example, in August 2012 treatment provider Mr. Shellenberger observed Plaintiff appeared to be responding to internal stimuli -- a recognized symptom of psychosis.[11]  ECF No. 15 at 12 (citing Tr. 927).  As yet

_____

[11]*See e.g., Daniel*, 2014 WL 2813136, at *4 (Dr. Smith concluded there was no "evidence at all of a thought disorder or psychosis" and Plaintiff "did not appear to be responding to internal stimuli."); *Gallegos*, 2008 WL 1734376, at *10 (Plaintiff

another example, three weeks later, on August 23, 2012, Mr. Shellenberger again observed Plaintiff appeared to be responding to internal stimuli, again indicating active psychotic symptoms. ECF No. 15 at 12 (citing Tr. 919). As even more examples, in October 2012 Plaintiff told Dr. Ballasiotes he was experiencing auditory hallucinations on a periodic basis; ECF No. 15 at 11 (citing Tr. 892); in February 2013 Dr. Ballasiotes changed Plaintiff's diagnosis from unspecified psychosis to schizophrenia, paranoid type, indicating psychotic symptoms persisted despite sobriety; ECF No. 15 at 8 (citing Tr. 847); and, in July 2013, Plaintiff told Mr. Shellenberger he had been hearing voices for the last two weeks. ECF No. 15 at 12 (citing Tr. 802). Notably, this July 2013 record contradicts the earlier and more positive June 2013 record, Tr. 808, cited by the ALJ.

Plaintiff does not directly challenge the ALJ's treatment of this and other evidence; instead, Plaintiff contends these treatment records refute the ALJ's conclusions. *See, e.g.*, ECF No. 15 at 10-11 (citing medical records indicating psychosis was not in remission even after Plaintiff became clean and sober).[12] The

had no objective findings of schizophrenia such as suspiciousness, preoccupation with internal stimuli, blunting of affect or loosening of associations).

[12] These include, in part, the records of treating therapist Evelyn Gillihan and treatment provider Reese Copeland, M.A. ECF No. 15 at 11, citing *e.g.,* Tr. 450

ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. Because the case is being remanded for other reasons, the ALJ should reconsider the remaining medical source records and opinions.

**C. Severe Impairments**

Plaintiff contends the ALJ improperly failed to identify psychosis not otherwise specified (NOS) as a severe impairment at step two. ECF No. 15 at 7. Specifically, Plaintiff asserts the ALJ erred when he accepted Dr. Toews' 2013 diagnosis of history of alcohol-related psychosis, in remission, and rejected Dr. Jennings' 2007 diagnosis of psychosis NOS. *Id.* Given this matter is being

---

(in November 2011 Plaintiff told Ms. Gillihan he continued to have auditory and visual hallucinations, he ignores the voices, he hears them three days a week, and currently they were not as bad as they had been before Plaintiff began medication); Tr. 340, 347, 317, 319 (in February and March 2012, Plaintiff told Mr. Copeland he was experiencing psychotic symptoms; however, urinalysis revealed no substance abuse); Tr. 801(in July 2013 Plaintiff told Mr. Copeland the voices came back "a little for a day or two" after his medication was stolen). The ALJ should also consider this evidence on remand.

remanded for other reasons, including to assess the medical evidence, the ALJ should conduct a new step two analysis.

**D.  Remedy**

In the event of reversible error, the parties disagree as to the appropriate remedy.  Plaintiff asks this Court to reverse for an immediate award of benefits.  ECF No. 15 at 19-20.  The Commissioner, on the other hand, asserts that the proper remedy should be to remand for further proceedings.  ECF No. 17 at 9 n.1.

Remand is appropriate when, as in this case, there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated.  *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  On remand, the ALJ should reconsider the credibility analysis.  Moreover, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating these opinions, supported by substantial evidence.  The ALJ may further develop the record by ordering additional consultative examinations and/or taking additional testimony from psychological experts.  Finally, the ALJ should reconsider Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence or free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **GRANTED.**

2. Defendant's motion for summary judgment (ECF No. 17) is **DENIED.**

3. Pursuant to sentence four of 42 U.S.C. § 405(g), this action is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

4. The District Court Executive is directed to file this Order, enter **JUDGMENT FOR PLAINTIFF**, provide copies to counsel, and **CLOSE** the file.

DATED this August 1, 2017.

<u>S/ Mary K. Dimke</u>
MARY K. DIMKE
U.S. MAGISTRATE JUDGE